UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAMON A. ZANOLETTI,<br><br>        Petitioner,<br><br>   v.<br><br>RICK HILL, Warden of FSP,<br><br>        Respondent. | Case No. CV 12-00530 DOC (AN)<br><br>**ORDER TO SHOW CAUSE RE DISMISSAL OF PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY AS TIME-BARRED** |

## I. BACKGROUND

Before the Court is a petition for writ of habeas corpus ("Petition") brought by Ramon A. Zanoletti ("Petitioner"), a state prisoner proceeding *pro se*. The Petition is brought pursuant to 28 U.S.C. § 2254 and raises two claims directed at Petitioner's May 2007 conviction in the California Superior Court for Los Angeles County (case no. BA303537) of multiple counts of insurance fraud, and sentence enhancements, for which he was sentenced to 21 years in state prison. For the reasons set forth below, Petitioner is ordered to show cause why his Petition should not be dismissed with prejudice because it is time-barred.

///

///

## II. DISCUSSION

### A. Standard of Review

Habeas Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), 28 U.S.C. foll. § 2254, requires a judge to "promptly examine" a habeas petition and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Local Rule 72-3.2 of this Court also provides "[t]he Magistrate Judge promptly shall examine a petition for writ of habeas corpus, and if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief, the Magistrate Judge may prepare a proposed order for summary dismissal and submit it and a proposed judgment to the District Judge." C.D. Cal. R. 72-3.2. Further, an untimely habeas petition may be dismissed *sua sponte*, however, the district court must give the petitioner adequate notice and an opportunity to respond before doing so. *Day v. McDonough*, 547 U.S. 198, 209-10, 126 S. Ct. 1675 (2006); *Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001).

### B. Statute of Limitations

The Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which establishes a one-year statute of limitations for state prisoners to file a habeas petition in federal court, because the Petition was filed after April 24, 1996, AEDPA's enactment date. 28 U.S.C. § 2244(d)(1); *see Lindh v. Murphy*, 521 U.S. 320, 327-37, 117 S. Ct. 2059 (1997). In most cases, the limitations period begins to run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

///
///
///

The face of the Petition and relevant state court records[1] establish the following relevant facts. Petitioner was convicted of the above offenses in May 2007, and was sentenced on May 22, 2007. On April 28, 2009, the California Court of Appeal affirmed the judgment of conviction (case no. B199682). The California Supreme Court then denied review of the court of appeal's decision on August 12, 2009 (case no. S172942). (Pet. at 2-3[2]; state court records.) Petitioner does not appear to have filed a petition for certiorari with the United States Supreme Court.

Therefore, for purposes of AEDPA's limitations period, Petitioner's judgment became final on November 10, 2009, the ninetieth day after the state high court denied his petition for review and the last date for him to file a petition for certiorari with the Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). The statute of limitations then started to run the next day, November 11, 2009, and ended a year later on November 10, 2010. 28 U.S.C. § 2244(d)(1)(A); *see also Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Petitioner did not constructively file his pending Petition until January 11, 2012 -- 427 days (approximately one year and two months) after the expiration of the limitations period.[3] Accordingly, absent some basis for tolling or an alternative start date to the

---

[1] The Court takes judicial notice of Petitioner's records in the state appellate courts, which are available on the Internet at http://appellatecases.courtinfo.ca.gov ("state court records"). *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (federal habeas courts may take judicial notice of relevant state court records).

[2] Petitioner did not consecutively number the pages of the Petition, his attached pages, and his exhibits, as required by Local Rule 11-3.3. For the sake of clarity, the Court's page citations refer to the electronic pagination furnished by the CM-ECF electronic document filing system.

[3] Pursuant to the "mailbox rule," a *pro se* prisoner's federal habeas petition is deemed to be filed on the date the prisoner delivers the petition to prison authorities
(continued...)

limitations period under 28 U.S.C. § 2244(d)(1), the pending Petition is time-barred.

**C.   Statutory Tolling**

AEDPA includes a statutory tolling provision that suspends the limitations period for the time during which a "properly-filed" application for post-conviction or other collateral review is "pending" in state court. 28 U.S.C. § 2244(d)(2); *Waldrip v. Hall*, 548 F.3d 729, 734 (9th Cir. 2008); *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005). An application is "pending" until it has achieved final resolution through the state's post-conviction procedures. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S. Ct. 2134 (2002). The limitations period is not tolled between the time a final decision is issued on direct state appeal and the time a state collateral challenge is filed because there is no case "pending" during that interval. *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). On collateral review, however, "intervals between a lower court decision and a filing of a new petition in a higher court," when reasonable, fall "within the scope of the statutory word 'pending'" thus tolling the limitations period. *Saffold*, 536 U.S. at 221, 223; *Evans v. Chavis*, 546 U.S. 189, 192, 126 S. Ct. 846 (2006) (*citing Saffold*).

Further, to qualify for statutory tolling during the time the petitioner is pursuing collateral review in the state courts, his first state habeas petition must be constructively filed before, not after, the expiration of AEDPA's one-year limitations period. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d)

---

[3]/   (...continued) for mailing to the clerk. *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S. Ct. 2379 (1988); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001); *see also* Habeas Rule 3(d). The envelope containing the Petition indicates Petitioner delivered it to the prison mail system on January 11, 2012 (the date he signed the Petition) and the next day the prison postmarked and mailed it to the Clerk's Office. The Petition was received and filed by the Clerk's Office on January 20, 2012. (Pet. at 1, 97.) For purposes of the timeliness analysis, the Court finds Petitioner constructively filed the Petition by delivering it to the prison mail system on January 11, 2012.

Page 4

does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition [] that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled").

The face of the Petition and relevant state court records establish Petitioner filed three state habeas petitions that are relevant for purposes of the statutory tolling analysis. His first habeas petition was constructively filed in the superior court just *two days* before the limitations period expired, on November 8, 2010 (case no. BA303537).[4] That petition was denied on June 6, 2011. Next, on June 20, 2011, he filed a habeas petition in the state court of appeal (case no. B233814), which was denied on July 8, 2011. Finally, on September 2, 2011, he filed another habeas petition in the California Supreme Court (case no. S196164), which was denied on January 4, 2012. (Pet. at 3-5; state court records.)[5] Given 422 days of statutory tolling for the pendency of all three state habeas petitions and the relevant intervals between them, AEDPA's limitations deadline was extended from November 10, 2010, to January 6,

---

[4] The mailbox rule also applies to *pro se* state habeas petitions. *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). The Court, pursuant to its authority to take judicial notice of relevant state court records in federal habeas proceedings, *Duncan*, 297 F.3d at 815, has obtained a copy of the habeas petition Petitioner filed in the superior court. That petition reflects Petitioner's proof of service was dated November 8, 2010. For purposes of the timeliness analysis, and absent proof to the contrary, the Court gives Petitioner the benefit of the doubt by assuming the authenticity of his November 8, 2010 proof of service date, and further assumes that he constructively filed his superior court habeas petition by delivering it to the prison mail system on that date.

[5] Petitioner filed an additional habeas petition in the California Supreme Court on May 19, 2011 (case no. S193335), which was denied on October 19, 2011. However, this petition has no bearing on the statutory tolling analysis because its pendency merely overlapped his relevant round of state habeas review.

Page 5

2012. The pending Petition, constructively filed on January 11, 2012, would still be untimely by 5 days.

Petitioner filed a prior federal habeas action, which has no bearing on the Court's timeliness analysis.[6/] By the AEDPA's express terms, the limitations period is only tolled during the pendency of "a properly filed application for *State* post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2) (emphasis added). Section 2244(d)(2) does not toll the limitations period while a *federal* habeas petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181-82, 121 S. Ct. 2120 (2001). Further, the pending action cannot "relate back" to the prior action because that action was dismissed in its entirety as unexhausted and is no longer pending (*see* CV 11-9071 DOC (AN), dkt. 4&5). *Rasberry v. Garcia*, 448 F.3d 1150, 1155 (9th Cir. 2006) ("[T]he relation back doctrine does not apply where the previous habeas petition was dismissed because there is nothing to which the new petition could relate back.").

Despite receiving the statutory tolling to which he is entitled, Petitioner's pending Petition is still untimely.

**D.     Alternative Start of the Statute of Limitations**

   **1.     State-Created Impediment**

In rare instances, AEDPA's one-year limitations period can run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that the statute of limitations was delayed by a state-created impediment requires establishing a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Petitioner's filings do not set forth any facts that show he is entitled to relief under this provision.

---

[6/]     A federal court may take judicial notice of its own records in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### 2. Newly Recognized Constitutional Right

AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, the one-year limitations period begins to run on the date which the new right was initially recognized by the Supreme Court. 28 U.S.C. § 2244(d)(1)(C). Petitioner's filings do not set forth any facts that show he is entitled to relief under this provision.

### 3. Discovery of Factual Predicate

AEDPA also provides that, in certain cases, its one-year limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Petitioner's filings do not set forth any facts that show Petitioner is entitled to an alternate start date to the limitations period based upon the late discovery of the factual predicate.

## E. Equitable Tolling

The AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, --- U.S. ---, 130 S. Ct. 2549, 2560 (2010). However, "[e]quitable tolling is justified in few cases" and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (*quoting Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

"[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005); *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079 (2007). *Pace*'s diligence prong requires the petitioner to show he engaged in reasonably diligent efforts to file his § 2254 petition throughout the time the limitations period was running. *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006); *see also*

*Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (equitable tolling requires a showing that "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll" and "extraordinary circumstances prevented him from filing his petition on time"). The petitioner must also demonstrate that he exercised reasonable diligence in attempting to file his habeas petition after the extraordinary circumstances began otherwise the "link of causation between the extraordinary circumstances and the failure to file [is] broken." *Spitsyn*, 345 F.3d at 802. *Pace*'s "extraordinary circumstances" prong requires the petitioner to "additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotations and citations omitted). Further, equitable tolling determinations are "highly fact-dependent," *Mendoza*, 449 F.3d at 1068, and the petitioner "bears the burden of showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

Petitioner's filings do not show he is entitled to equitable tolling in this case. **F. Alleged Actual Innocence Based on Newly-Discovered Evidence**

In ground two, Petitioner claims "newly-discovered evidence" establishes his innocence. (Pet. at 5, 7, 20-22.) To the extent Petitioner seeks to have his time-barred claims heard on the merits on the ground this evidence creates a credible claim of actual innocence, he falls far short of making such a showing.

Under *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). However, "[i]n order to present otherwise time-barred claims to a federal habeas court under *Schlup*, a petitioner must produce sufficient proof of his actual innocence to bring him within the narrow class of cases . . . implicating a

fundamental miscarriage of justice." *Id.* at 937 (internal quotation marks and citations omitted). While a petitioner is not required to proffer evidence creating an "absolute certainty" about his innocence, the *Schlup* gateway is an "exacting standard" that permits review only in the "extraordinary case." *Id.* at 938; *see also House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064 (2006). Specifically, Petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee*, 653 F.3d at 938; *Schlup*, 513 U.S. at 327. The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Lee*, 653 F.3d at 938-39; *Schlup*, 513 U.S. at 316. Further, Petitioner must support his allegations "with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

### 1. Background

Petitioner was convicted of his role in a complex insurance fraud scheme, in which he participated in organizing and staging car accidents, and fraudulently billing insurance companies. The evidence showed he leased space from a chiropractor's office, where his wife worked and received a salary, as well as an adjacent office, which he advertised as a law office despite the fact he was not a lawyer. It appears some auto accidents were staged, and in other situations the parties involved were persuaded to go to the chiropractor's office and sign in for fraudulent treatments. Then, Petitioner's wife "prepared fraudulent paperwork that was provided to the law office, which then submitted the paperwork to insurance companies in support of demands for payment." The scheme led to "a multi-agency investigation" focusing on 21 different people, and members of law enforcement eventually concluded Petitioner "was a capper who specialized in staging accidents . . . ." Seven insurance companies were victimized. (Pet. at 24-25); *People v. Zanoletti*, 173 Cal. App. 4th 547, 550-55, 92 Cal. Rptr. 3d 757 (Cal. Ct. App. 2009).

### 2. Discussion

Petitioner proffers a notarized letter dated November 3, 2010, addressed to Petitioner from an alleged handwriting expert, Sandra S. Basye, in which Basye claims she conducted a fingerprint comparison analysis and concluded the signatures of 18 chiropractor patients on the clinic's sign-in sheet were authentic. Basye also attached a sheet showing her qualifications as an expert and stated she would testify to her conclusions. (Pet. at 84-89.) Petitioner contends this "newly-discovered evidence" undermines his guilty verdict because it shows he never forged anyone's signatures to obtain insurance proceeds. (Pet. at 7, 11-17, 20-22.)

Petitioner has failed to present sufficient evidence to show that it is more likely than not that no reasonable juror would have convicted him. *See Sistrunk v. Armenakis*, 292 F.3d 669, 673, 677 (9th Cir. 2002). The prosecution witnesses to which Petitioner refers were individuals who participated in the insurance fraud scheme. (Pet. at 10-13.) Even assuming Petitioner had shown the signatures on the sheet were authentic, it would not make any difference that the people *who were working in collusion with him* personally signed the sign-in sheet. Indeed, the court of appeal's summary of the facts *assumes* several of those people personally signed the sign-in sheet and "falsely indicat[ed] that they had received treatment on numerous additional occasions." *Zanoletti*, 173 Cal. App. 4th at 551-54. Whether those signatures were forged or authentically provided by parties to the crime had no bearing on Petitioner's guilt or innocence because, in either case, the treatments were still fraudulent. Moreover, Petitioner's own exhibits, coupled with the facts established by the state court of appeal on direct review of his conviction,[7] show his conviction was based on substantially more evidence than merely forging signatures on a sign-in sheet. As discussed above,

---

[7] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)).

Page 10

1 the evidence against Petitioner in this complex fraud scheme included the testimony
2 of several of the parties who were involved in the scheme, as well as "capping books"
3 that listed names, dates, and other information pertaining to staged accidents. (Pet. at
4 10-16); *Zanoletti*, 173 Cal. App. 4th at 550-55. Thus, even if there was a dispute over
5 the authenticity of signatures on a sign-in sheet, it would have posed at best a
6 tangential issue, so Petitioner's "newly-discovered" evidence would not have carried
7 any weight with the jury. *Lee*, 653 F.3d at 945.

8 The foregoing establishes Petitioner's letter from a handwriting expert would
9 have been unavailing to a rational jury. Therefore, in assessing "how reasonable jurors
10 would react to the overall, newly supplemented record," including the evidence
11 Petitioner now proffers, the Court cannot conclude that it is more likely than not that
12 no reasonable juror would have convicted him. *See Lee*, 653 F.3d at 945.

13 Petitioner has not presented a credible claim of actual innocence such that he
14 "may pass through the *Schlup* gateway and have his otherwise time-barred claims
15 heard on the merits." *Id.* at 932.

16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

# O R D E R

Based on the foregoing, the Court finds the Petition is untimely. Accordingly, Petitioner shall have until **February 27, 2012**, to file a written response and show cause why his Petition should not be dismissed with prejudice because it is time-barred. In responding to this Order, Petitioner must show by declaration and any properly authenticated exhibits what, if any, factual or legal basis he has for claiming that the Court's foregoing analysis is factually or legally incorrect, or that AEDPA's one-year statute of limitations should be tolled, or the start date extended.

**Petitioner is warned that if a timely response to this Order is not made, Petitioner will waive his right to respond and the Court will, without further notice, issue an order dismissing the Petition, with prejudice, as time-barred.**

**Further, if Petitioner determines the Court's above analysis is correct and the Petition is clearly time-barred, he should consider filing a Request For Voluntary Dismissal of this action pursuant to Fed. R. Civ. P. 41(a)(1) in lieu of a response to this Order.**

IT IS SO ORDERED.

DATED: February 6, 2012

_____
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE